SANDERS, Justice
(concurring).
I concur in the result reached in the decision on rehearing. However, certain features of the majority opinion require that I record my views separately from those of my brethren on the important questions raised by this case.
By statement of facts in its brief on rehearing, the state makes the following concession:
“Defense counsel and the Assistant District Attorney spoke with the Trial Judge and advised him of the agreement reached between the State and defense counsel. In this conversation, *869 held in Chambers, the Trial Judge was aware of the agreement reached by the defense counsel and the Assistant District Attorney. The Trial Judge agreed on a sentence of two and one-half years in the Section ‘C’ case." (Italics supplied)
While this concession, in my opinion, goes well beyond the pleadings and evidence in the record, it is nonetheless binding upon the state for purposes of this appeal. With this concession, the case falls squarely within the holding of this Court in State v. Mockosher, 205 La. 434, 17 So.2d 575. The rule of that case is that a plea bargain agreement of this type sanctioned by the judge is enforceable as a bar to court proceedings in violation of its terms. The rule is supported by the weight of authority elsewhere. On this basis, which I believe to be sound, I agree that the result reached by the Court on rehearing is correct.
However, I cannot subscribe to the finding in the majority opinion that “the evidence clearly discloses the consent and approval of the trial judge * * * [to the plea bargain agreement] was secured * * The motion to quash contains no allegation that the judge approved the agreement. The answer to the motion filed by the district attorney specifically alleges that the judge was not a party to it. The record shows only (and this by a statement of the trial judge) that the assistant district attorney “recommended” to the judge a sentence of two and a half years. Nowhere in the record is it established that the trial judge concurred in the agreement or made any commitment in reference to it. The trial judge made his position perfectly clear when he stated in ruling on the motion to quash: “ * * * the court must state that it is not part, has not been part, of any agreement * * *.”
I am also unable to subscribe to the pronouncement, unnecessary for the holding in this case and conceded to be the minority rule, that in Louisiana a district attorney may grant immunity to an accused completely independent of the court. This conclusion is based primarily upon the circumstance that a district attorney in this state has the authority to enter a nolle prosequi without the consent of the court. This authority of nolle prosequi without the consent of the court is expressly conferred by statute. See LSA-R.S. 15 :327— 329. This authority is clear. However, contrary to the law of many of the other states,[1] a nolle prosequi in this state does not bar a subsequent prosecution for the same offense. In legal effect it only discharges the particular indictment. LSA-R. S. 15 :328. There is a vast difference between entering a nolle prosequi and granting full immunity for crime. The first is *871 procedural, but the latter is a complete bar to prosecution. This being true, it does not follow that the district attorney alone has general authority to grant immunity to an accused for a crime. An additional reason why such an inference does not follow is that the legislature has specified the instances in which immunity may arise.[2] In the one instance in which discretion is vested in the district attorney,[3] the circumstances are carefully circumscribed.
It must be conceded, as stated in the majority opinion, that the district attorney is given full discretion as to whom, when, and how he is to prosecute. He also has full discretion in determining whether an accused is to be charged as a multiple offender. However, it is my view that the very existence of this plenary discretion supports the rule that a court will not bar a prosecution because of a promise of immunity made by the district attorney alone. The promise is an extraneous matter related solely to the exercise of the district attorney’s discretion. An inquiry into it requires the court to probe both the district attorney’s office and his conscience. To bar a prosecution or withhold sentence because of it is an infringement by the court upon the discretion exercised by the district attorney when he elected to prosecute the action.
A basic reason why the judge’s approval of such an agreement is required for enforceability is that the effect of its enforcement is to make it binding upon the court itself — to such an extent that the processes of the court are stayed although the accused is before it for sentence on a charge valid on its face.
I recognize that there is a minority view that the prosecuting attorney alone may grant immunity to an accused for crime. However, decisions squarely supporting it are difficult to find. Of the several cases cited in the majority opinion as supporting it either directly or by analogy, only one is squarely decisive of the point: People v. Bogolowski, 326 Ill. 253, 157 N.E. 181. Early comment on this case suggests that it then stood almost alone in the jurisprudence.[4] I find little or no jurisprudential support which has been added since that time. I see no reason to adopt this view in the instant case.
That there are dangers in an unrestricted rule which would empower a district attorney to grant immunity for crime is evident.
*873 In the first place, the content of verbal agreements, such as the one in the instant case, will provide a prolific source of litigation. The recollection of the parties is frequently imperfect. Misconstruction is easy. A careless word, a misconstrued statement, or a distorted expression of the district attorney will erupt into litigation. The criminal of today seeks the immunity bath as eagerly as others in history have sought the miraculous fountain of youth.
Furthermore, it opens the door to many abuses in plea bargaining. Professor Newman F. Baker in his excellent article, “The Prosecutor-Initiation of Prosecution,” 23 Journal of the American Institute of Criminal Law and Criminology 770, 790, makes the following allusion to this:
“But the chief loss to orderly administration of the criminal law which comes from bargaining for pleas of guilty, pleas to lesser offenses and the ‘immunity bath’ is that it is all extralegal, secret and under-cover. Statutes are stretched or ignored. It is ‘law in action’ entirely, with slight regard for law in books.”[5]
For a comprehensive statement of numerous objections to vesting unrestricted authority in the prosecuting officer to extend immunity to an accused for crime, see I Varon, Searches, Seizures and Immunities pp. 513-514 (1961).
The office of district attorney in this state is one of fine tradition. It is also one of great power. To further extend this power at a time when' the Louisiana State Law Institute is engaged in a revision of the Code of Criminal Procedure is, in my opinion, inadvisable. If an extension is to be made, it should be by statutory enactment as part of the new Code. In such an enactment the exercise of the great power of granting immunity for crime can be regulated in the interest of an efficient administration of justice.
For the foregoing reasons, I respectfully concur in the decree.

. See Commentary, Code of Criminal Procedure, American Law Institute (Official Draft, June 15, 1930) pp. 893-894.

. See e. g. LSA-R.S. 14:121; LSA-R.S. 15:468: LSA-R.S. 51:141, 146, 425.

. LSA-R.S. 14:121 (Informer in bribery or corrupt influence).

. In 23 Journal of the American Institute of Criminal Law and Criminology 789 (1933), Professor Newman IT. Baker, Northwestern School of Law, made the following comment on the case: “Except in Texas the courts of other states do not agree that the prosecutor has the power to make a binding promise of immunity but hold that the bargain creates only an equitable right to clemency.”

. See also Hall, Theft, Law and Society pp. 111-121 (1935); Holey, Politics and Criminal Prosecution pp. 149-192 (1929).