CALOGERO, Justice.
A district court judge in the Criminal District Court for the Parish of Orleans signed a document entitled “grant of Immunity under La.Code of Criminal Procedure, Art. 439.1” along with the district attorney of Orleans Parish and the attorney general of the State of Louisiana, purporting to grant immunity, both transactional and use, from prosecution, to each of the four relators herein, Charles F. Jones, A. A. Boudousquie, Jr., Richard M. Johnson and John W. Bean “for testimony or information [to be] given” by them under oath in consolidated civil proceedings pending in the United States District Court for the Eastern District of Louisiana.[1]
From that grant of immunity, or order, and, inferentially at least, from a ruling of *1379 the trial court refusing to quash the proceedings in criminal district court which resulted in the order granting immunity, the four relators sought from this Court and were granted a writ of review.
The proceedings in the district court arose in the following manner. Three of the four relators (Boudousquie, Bean and Jones) along with the companies by whom the three were employed were indicted in federal court for violation of the Sherman Antitrust Act. The three individuals entered pleas of nolo contendere. Thereafter, the attorney general instituted on behalf of the State of Louisiana a civil class action against relators and their several employers in the United States District Court for the Eastern District of Louisiana for treble damages allegedly due the state, its political subdivisions, public agencies, districts of the state and other consumers similarly situated because of violations of the antitrust laws.[2] When the attorney general on behalf of the state issued subpoenas in conjunction with that federal civil action commanding the appearance of relators at the attorney general’s office for the purpose of having their depositions taken, counsel for relators advised the attorney general that relators intended to invoke their federal and state privileges against self-incrimination and would refuse to testify.
At that point the attorney general and the district attorney for Orleans Parish filed a pleading in Criminal District Court in Orleans Parish entitled “State’s Grant of Immunity and Motion under Article 439.1 of the Louisiana Code of Criminal Procedure” coupled with a “Motion of Attorney General for Subpoena of Witnesses Before the Attorney General.” The subpoenas sought the appearance of the four relators for questioning by the attorney general in the attorney general’s New Orleans office on the same date and at the same time designated in the earlier-filed deposition subpoenas in the federal civil action. Attached to the state’s initial pleading was an order which, as proposed, required that re-lators appear before the attorney general pursuant to the subpoena issued them under Article 66 of the Code of Criminal Procedure and answer questions regarding the Rebar Steel Antitrust Investigation, and recited that they “may not refuse to comply with the order on the basis of their privilege against self-incrimination, but no testimony nor other information compelled under this order, or any information directly or indirectly derived from such testimony or other information, may be used against the witnesses in any criminal case except a prosecution for perjury, giving a false statement, or otherwise failing to comply with said order.” That proposed order was not signed by the district judge. The judge did, however, sign an order attached to the motion for subpoenas, commanding the Clerk of Court to issue subpoenas directing the four relators to appear at the attorney general’s office at the same prescribed time for questioning by the attorney general or his assistants.
Thereafter a hearing took place at which counsel for the four relators moved to quash the application and moved to quash the state court subpoenas (both motions later reduced to writing). The former motion to quash urged that the Criminal District Court for the Parish of Orleans was without jurisdiction because of the peculiar nature of the proceeding, and the latter motion complained that Article 66[3] of the Code of
*1380 Criminal Procedure was unavailable as authority for issuance of the subpoenas because there was no intent to have relators questioned by the attorney general or the district attorney concerning any offense under investigation by him.[4]
At the hearing an assistant attorney general testified, and it was stipulated that the district attorney for the Parish of Orleans would have similarly testified if called, that at all times material to the proceeding neither of these agencies — the offices of the attorney general or of the district attorney for Orleans Parish — had a criminal investigation or action pending or contemplated, and that there was also no pending or contemplated grand jury proceeding with respect to the matter.[5] Furthermore, except for the proceeding then being conducted before the trial judge, there were no proceedings pending in any court of this state, criminal or civil.
After argument, the trial judge granted the relators’ motion to quash the state subpoenas pursuant to Article 66; he refused, however, to quash the instant proceeding; and he signed, along with the attorney general and the district attorney, the document referred to in the first paragraph of this opinion, by which there was purportedly granted to the four relators transactional and use immunity from prosecution for testimony which they were later to give, under oath, in the consolidated civil proceedings in the United States District Court for the Eastern District of Louisiana. Although the state did not seek writs complaining of the judge’s quash of the state subpoenas, making that action final, we granted rela-tors’ application for supervisory writs which asked that we inquire into the judge’s grants of immunity so as to ascertain their validity. The sole issue before us, then, is whether the attorney general of the state and a district attorney can take advantage of the provisions of Article 439.1 so as to have immunity granted to a person whose deposition they wish to take in a federal civil action although the district court pleading which they employ has no relation to any state court prosecution or other proceeding, pending or contemplated.[6]
“The attorney general or district attorney, respectively, may determine who shall be present during the examination and may order all persons excluded, except counsel for the person subpoenaed.” (emphasis added)
The statutory provision upon which the attorney general and the district attorney relied in these district court proceedings is Article 439.1 Louisiana Code of Criminal Procedure. That article provides in full as follows:
“A. In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a grand jury of the state, at any proceeding before a *1381 court of this state, or in response to any subpoena by the attorney general or district attorney, the judicial district court of the district in which the proceeding is or may be held shall issue, in accordance with Subsection B of this article, upon the request of the attorney general together with the district attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in Subsection C of this article.
“B. The attorney general together with the district attorney may request an order under Subsection A of this article when in his judgment
(1) the testimony or other information from such individual may be necessary to the public interest; and
(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self incrimination.
“C. The witness may not refuse to comply with the order on the basis of his privilege against self incrimination, but no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order.
“D. Whoever refuses to comply with an order as hereinabove provided shall be adjudged in contempt of court and punished as provided by law.” (emphasis added)
The state’s position before this Court is that the article may be utilized in the instant situation because the persons granted immunity were individuals who have “been or may be called to testify or provide other information ... in response to any subpoena by the attorney general or district attorney . . . .” The attorney general argues that “any subpoena” refers to any subpoena at all, in federal or state court, without any requirement that it be related to a-proceeding in a state grand jury or in state court.
It is important to reemphasize that the assistant attorney general testified and the attorney general and district attorney in effect stipulated, and in brief candidly admit, that there is no pending or contemplated state grand jury proceeding, that there is no proceeding before a court of this state other than the instant one (the purpose of which is not to procure testimony or other information at a proceeding before a court of this state), and that, as they concede, “the whole purpose of our seeking immunity for these people is to obtain their deposition for purposes of discovery only in connection with the ongoing civil suit.” Had either the attorney general’s or district attorney’s position been that he intended to question relators in conjunction with his investigation of criminal wrongdoing pursuant to his subpoena of them under Article 66 we would have a different legal issue. Since there was no review applied for from the quash of those subpoenas, however, that issue is not before us. And, in any case, the state’s admittedly exclusive reason for quizzing relators was to obtain answers for purposes of discovery in the federal civil action.
We turn now to an examination of Article 439.1, a 1972 addition to the Code of Criminal Procedure which has heretofore remained uninterpreted, and to our findings as to the validity of the attorney general’s reliance on it in this situation. We believe that the subpoena by the attorney general or district attorney contemplated by the article is not one issued in conformity with the laws, and/or under authority of a court, of a sovereign other than the State of Louisiana. Nor do we believe that under this article there exists, or was intended to exist, the right in the attorney general, district attorney and district court judge to grant immunity independent of state compulsion of the testimony or information, the perimeters of which dictate the extent of *1382 immunity which ensues. C.Cr.P. art. 439.-1(C).
Our conclusion in this regard is premised essentially upon a common sense appreciation of the statute and what we understand to be the statute’s intent. Our conclusion is fortified by the qualifying language in subsection A which, in describing the district court which shall issue the order requiring the testimony, refers to the “judicial district court of the district in which the proceeding is or may be held.” We believe that this clause qualifies the entire section and refers, not to a proceeding such as the present where the attorney general is seeking an immunity order unrelated to any pending state matter, but to proceedings ancillary to or a part of state court proceedings. The language of the article is this: “In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a grand jury of the state, at any proceeding before a court of this state, or in response to any subpoena by the attorney general or district attorney, the judicial district court of the district in which the proceeding is or may be held shall issue . .” We believe that the phrase “any subpoena” refers only to subpoenas issued in connection with a proceedings before “a grand jury of the state,” proceedings before “a court of this state,” or other proceedings of any nature which are related to a state criminal matter.
Thus we find the provision of Article 439.1 of the Code of Criminal Procedure inapplicable and unavailable in this situation where the attorney general seeks an immunity order which he wants to employ in extracting deposition testimony in a pending federal court civil action.
Aside from basing his argument on Article 439.1, the attorney general argues that inherent in the district attorney’s broad powers in the enforcement of our criminal laws (for instance, he “has entire charge and control of every criminal prosecution instituted or pending in his district and determines whom, when, and how he shall prosecute” C.Cr.P. art. 61) is the authority to decide who shall not be prosecuted, which he equates with a general power to grant immunity. Thus he, in effect, claims that apart from Article 439.1 he has the authority in this case to grant immunity to relators. In support of his position, he directs our attention to the following language in State v. Hingle, 242 La. 844, 139 So.2d 205, 210 (1962):
“Louisiana is in the category of those states that have no statutory or jurisprudential prohibition against the power of a district attorney to nolle prosequi a case or grant immunity to an accused completely independent of the court. On the contrary, under our specific statutory provisions, ‘The district attorney is the representative of the public and the legal adviser of the grand jury. * * * ’ and, ‘Subject to the supervision of the attorney-general * * * shall have entire charge and control of every criminal prosecution instituted or pending in any parish wherein he is a district attorney, and shall determine whom, when, and how he shall prosecute * * (emphasis added)
While the majority on rehearing in Hin-gle did use the language quoted herein-above, the Court was there speaking of the right of the district attorney to bind himself not to prosecute given charges in return for an accused’s entering a plea to a lesser crime. The Court found prosecution of a defendant as a multiple offender barred by a prosecutor’s promise not to so prosecute in return for a plea of guilty to attempted possession of marijuana. The Court was not there concerned with a carte blanche grant, or promise of immunity from prosecution, or a grant of immunity in exchange for prospective testimony, but merely with the district attorney’s promise not to prosecute a particular charge as part of a plea bargain. In any event, the language in Hingle was obiter dicta and was soundly criticized by Justice (now Chief Justice) Sanders of this Court who in a concurring opinion stated:
“I am also unable to subscribe to the pronouncement, unnecessary for the hold *1383 ing in this case and conceded to be the minority rule, that in Louisiana a district attorney may grant immunity to an accused completely independent of the court. This conclusion is based primarily upon the circumstance that a district attorney in this state has the authority to enter a nolle prosequi without the consent of the court. This authority of nolle prosequi without the consent of the court is expressly conferred by statute. See LSA-R.S. 15:327-329. This authority is clear. However, contrary to the law of many of the other states, a nolle prosequi in this state does not bar a subsequent prosecution for the same offense. In legal effect it only discharges the particular indictment. LSA-R.S. 15:328. There is a vast difference between entering a nolle prosequi and granting full immunity for crime. The first is procedural, but the latter is a complete bar to prosecution. This being true, it does not follow that the district attorney alone has general authority to grant immunity to an accused for a crime.” [Footnote omitted] Hingle, supra, at 214.
We find the language in Hingle relied upon here by the attorney general neither persuasive nor controlling.
Additionally, however, the attorney general points to In re Greene, 260 La. 859, 257 So.2d 433 (1972) for the proposition that the district attorney has the authority to grant constitutional immunity in order to compel testimony. Indeed this Court in a per cu-riam to a writ denial in that case did acknowledge the right of the state to grant immunity, but it was from “prosecution arising out of responsive testimony material to the issue or question in controversy”, (testimony sought in a state grand jury proceeding) and it was in conjunction with a public bribery investigation. Article 19, section 13 of Louisiana Constitution of 1921[7] specifically provided at that time this special exception to the right of self-incrimination: “Any person may be compelled to testify in any lawful proceeding against any one who may be charged with having committed the offense of bribery . . .; but such testimony shall not afterwards be used against him in any judicial proceedings, except for perjury in giving such testimony.” Because the present investigation does not relate to public bribery and because there is here no state proceeding, we find In re Greene, supra, is likewise distinguishable from the present situation.
There is no provision of law in Louisiana which grants to the district attorney the discretionary power to grant immunity except in public bribery, bribery of voters and corrupt influencing cases. (R.S. 14:121). It is for this reason that the attorney general and district attorney attempted to rely upon and, in fact, must rely upon Article 439.1, not for the right to grant immunity, but for the procedure it affords him to compel testimony in certain limited circumstances, i. e., after a person has refused or is likely to refuse to testify in an appropriate state proceeding when the individual’s prospective testimony or information may be necessary to the public interest and the trial judge has issued, on joint application of the attorney general and the district attorney, an order compelling testimony. When the attorney general and the district attorney have made use of this procedure and the person has testified, then one result of that testimony is that “no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against [him] in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order.” Action of the attorney general and the district attorney when they make use of the provisions of this article, then, can finally result in a person’s gaining transactional and use immunity, but that result is not the same as a right in the attorney general and/or the district attorney to grant immunity. We conclude, therefore, that, aside from the discretion afforded by *1384 R.S. 14:121 and the indirect grant under Article 439.1, there is no authority in attorney general or district attorney, statutory or inherent, to grant immunity from prosecution.
Because we find no constitutional or statutory authority for the proceedings which took place below and the order which rela-tors protest, we make the writ heretofore granted peremptory and render judgment herein in favor of relators Charles F. Jones, A. A. Boudousquie, Jr., Richard M. Johnson, and John W. Bean, reversing and vacating the order of the criminal district court which purported to grant immunity to petitioners from criminal prosecution.

. The titles of those proceedings are as follows: Louisiana v. Armco Steel Corporation, et al., civil action no. 75-317 and Wilson P. Abraham v. Armco Steel Corporation, et al., civil action no. 74-1899.

. The complaint alleged that the defendants had engaged in a price-fixing conspiracy in violation of section 1 of the Sherman Act by agreeing among themselves to raise and stabilize the prices of rebar materials, to submit rigged and collusive bids for the sale of rebar materials, and to allocate the market in accordance with fixed percentage shares of each defendant. A similar class action in the same federal court was instituted by an individual plaintiff, Wilson P. Abraham. The stated action and the individual action, the exact titles of which appear in footnote one, were consolidated by the federal court.

. Article 66 of the Code of Criminal Procedure provides in full that:
“Upon written motion of the attorney general or district attorney setting forth reasonable grounds therefor, the court may order the clerk to issue subpoenas directed to the persons named in the motion, ordering them to *1380 appear at a time and place designated in the order for questioning by the attorney general or district attorney respectively, concerning any offense under investigation by him. The court may also order the issuance of a subpoena duces tecum.
“The contumacious failure or refusal of the person subpoenaed to appear is punishable as a contempt of court.

.Relator had also moved to quash the application for the asserted reason that applicants and the court had not complied with the court’s allotment procedures. We find it unnecessary to review the merits of this motion, denial of which is made the subject of one of relator’s assignments of error, because there is no record before us on this issue and we assume that it has been abandoned.

. The assistant attorney general also testified, “It is not our intention to prosecute any named defendant or any named parties at the state level.” .

. It might be well to point out that we do not have here a situation wherein persons who have been made immune from state prosecution are being prosecuted in federal court on the basis of their incriminating testimony, as was the situation in Murphy v. Waterfront Com’n of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Relators here have already entered pleas in their federal criminal prosecutions, and they have not yet given any testimony in the federal civil action either before or after the purported grant of immunity from state prosecution in the state criminal district court.

. This provision has no counterpart provision in the 1974 Constitution, but an almost identical provision remains in our law, R.S. 15:468. See also R.S. 14:121.