BRUNOT, J.
 

 The accused was convicted of forgery and uttering as true. Before sentence, he was charged with being a second offender. He was found guilty, as such, and was sentenced accordingly. This appeal is from that judgment and sentence.
 

 The accused was charged, tried, and convicted of the crime of embezzlement, in a Texas court, and was sentenced to serve a term of two years in the State Penitentiary of Texas for that crime. After serving that sentence, less the time reduction allowed for good behavior, he was released. A short time after his release, the Governor of Texas granted him a pardon.
 

 During the course of the trial in this state, upon the charges of forging and uttering as true, two bills of exception were reserved; one to the overruling of a motion for a new trial, and the other to the overruling of a plea in bar of prosecution and sentence as a second offender. In argument and brief the first bill of exception is waived by appellant’s counsel, and the second, alone, is relied upon.
 

 The question this bill presents is whether or not a full pardon of one convicted of a felony, granted after the sentence has been served, restores that individual to the status, so far as the law is concerned, that he occupied prior to conviction.
 

 From an examination of the authorities we find that in the states of Ohio, Virginia, Oklahoma, and Louisiana, it has been held that the effect of a full pardon is to restore the individual to his original status. In the states of New York, Kentucky, and Washington, it has been held that the double penalty, provided by statute for second offenders, is not affected by a full, pardon of the first offense.
 

 The courts of the states so holding reason that the penalty prescribed for second offenders is in no sense a penalty for the first offense. The courts of Ohio, Virginia, Oklahoma, and Louisiana recognize the force of the English rule and the reasoning of the text-writers upon the subject, and hold that the pardon restores the original status of the pardoned individual, i. e., a status of innocence of crime, and therefore a person occupying such a status, who is convicted of a crime subsequent to the granting of a full' pardon for the first offense, whether the pardon be granted before or after the expiration of the term of the sentence imposed upon him, must, quoad the second conviction, be dealt with and punished as a first offender.
 

 We think this rule is sound and that it cannot lead to the infliction of unjust punishment. On the other hand,.the New York, Kentucky, and Washington rule offers to an innocent person, who is found to have been
 
 *747
 
 unjustly convicted of a crime as a first offender, no relief from the effect of that con-. viction if, at any future time, he might violate the law.
 

 Counsel for appellant and the state have cited a number of authorities in support of their respective contentions. The principal ones, however, are opinions of the courts of last resort of the seven states mentioned supra, except, perhaps, the case of Ex parte Garland, 4 Wall. 380, 18 L. Ed. 366, and three decisions of the United States Supreme Court upholding the ruling in that case. In passing- upon the operation and effect of a pardon, which was an issue in the Garland Case, Mr. Justice Field, the organ of the court, said:
 

 “A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. * * * If granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.
 

 “There is only this limitation to its operation : it does not restore offices forfeited, or property interests vested in others in consequence of the conviction and judgment.”
 

 In the same case it was held that Congr.ess was powerless to inflict punishment beyond the reach of executive clemency.
 

 It is a recognized principle of constitutional law that the three departments of government, acting in their respective spheres, are each supreme and independent of the others; and it is the accepted rule that- the pardoning power is an executive function, which cannot be exercised or limited in its effect, by Congress or by the legislature of a state.
 

 In McDowell v. Couch, 6 La. Ann. 365, the court said:
 

 The pardoning power has always been construed in this State in the same manner as in England. “The term being derived from the Common Law of England, must ¡have the same import in our Constitution and laws which belongs to it in England.”
 

 In State v. Baptiste, 26 La. Ann. 134,
 
 the
 
 court passed upon the effect to be given an executive pardon, and said:
 

 “A pardon is supposed to be granted to one who has been improperly convicted, or who has sufficiently expiated his offense. If it was only efficacious when the party was in duress, its effects would only be a halfway relief. The doctrine, now well recognized upon this subject, we believe, is that a pardon gives to the person in whose favor it is granted a new character and makes of him a new man. When extended to him in prison, it relieves him and removes his disabilities; when given to him after his term of imprisonment has expired, it removes all that is left of the consequences of conviction.”
 

 The authorities relied upon by the state are directly opposed to the jurisprudence of this state and to that of the states of Ohio, Kentucky, and Oklahoma, and to the common-law rule of England. Of the two lines of authorities, we think the weight of authority supports the views expressed in the opinions giving full force and effect to executive pardons, rather than to those which hold that the Legislature may limit its effect merely to a restoration of citizenship and civil rights.
 

 We have read the pardon, in the record, carefully, and cannot construe it as anything other than a full pardon. It is not
 
 *749
 
 a roeje restoration to citizenship, as suggested by counsel for the state on page 15 of their brief. The words of the pardon are as follows: ■
 

 “Now, Therefore, I, Pat M. Neff, Governor of Texas, do, by virtue of the authiority vested in me by the Constitution and laws of the State of Texas, hereby grant the said R. E. Lee a full pardon, restoring him to full citizenship, giving him the full right to testify in any and all courts, and the full rights of suffrage.”
 

 The grant of a full pardon does not admit of a construction limiting its effect to a mere restoration to citizenship, to the right to testify and to the rights of suffrage.
 

 For the reasons stated, we think the trial judge erred in overruling defendant’s plea in bar to a prosecution upon the information filed against him under the provisions of Act No. 15 of 1928, and'it is therefore decreed that the judgment decreeing him a second offender and the sentence imposed thereunder be avoided and set aside, and this case be remanded to the trial court for sentence according to the views herein expressed, as a first offender.