755 So.2d 1199 (1999)
Jessica HARRIS, Appellant,
v.
Frank E. LEWIS, Jr., Angle P. Lewis, Jana Marie Lewis, A Minor, By and Through Her Father, Natural and Court Appointed Guardian and Next Friend, Frank E. Lewis, Jr.; and Frank E. Lewis, III, A Minor, By and Through His Father, Natural and Court Appointed Guardian and Next Friend, Frank E. Lewis, Jr., Appellees.
No. 1998-CA-01005-COA.
Court of Appeals of Mississippi.
August 3, 1999.
Rehearing Denied October 19, 1999.
*1200 Thomas D. Berry, Jr., Bay St. Louis, Attorney for Appellant.
Michael J. Casano, Gulfport, Attorney for Appellees.
BEFORE McMILLIN, C.J., DIAZ, AND LEE, JJ.
DIAZ, J., for the Court:
¶ 1. Jessica Harris appeals the decision of the Harrison County Circuit Court *1201 which awarded Frank and Angle Lewis actual and punitive damages in a defamation lawsuit against the appellant. Harris raises the following issues in her appeal:
(1) whether the verdict of the jury was supported by sufficient evidence, (2) whether the verdicts of the jury were against the weight of the credible evidence, (3) whether the trial court erred in failing to conduct a fair and proper trial resulting in manifest injustice, and (4) whether the lower court erred in giving jury instructions P-7, P-8, 11, and C-50. Finding no error, we affirm. Frank and Angle and their children Jena and Frank III, cross appeal. They raise the following issue: (1) whether the trial court failed to properly answer the jury's question regarding an award of attorney's fees. Finding no error, we deny the cross-appeal.

FACTS
¶ 2. In August 1996, Frank and Angle Lewis and their children moved to the Briarwood Subdivision in Gulfport, Mississippi from New Orleans, Louisiana. With seventeen years of experience in law enforcement, Frank found employment with the Harrison County Sheriffs Department. Angle transferred with Kmart, her employer of seventeen years. Jena and Frank III entered the Harrison County public school system.
¶ 3. While clearing their lot in preparation to set up their manufactured home, Frank and Angle were approached by Jessica Harris. Harris advised them that trailers were not allowed. Additionally, Harris circulated a letter around the neighborhood expressing disapproval of trailers. Despite these attempts to prevent house trailers, the Lewises' trailer and other trailers were allowed.
¶ 4. Lieutenant Pat Pope of the Gulfport Police Department ordered an investigation of the Lewises based on an anonymous letter which described drug activity at their trailer. Officer Brian Donovant of the Gulfport Police Department conducted a two week investigation of the Lewises including surveillance, collection of curbside trash, and coordination with the Harrison County Sheriffs Department's internal affairs division. On November 20, 1996, the Lewises' trailer was searched by law enforcement officers. The search conducted was a joint effort with the Harrison County Joint Task Force and Gulfport Police Department. Officer Donovant and officers from the Harrison County Sheriffs Department and Biloxi Police Department searched the trailer with the consent of Frank. The search did not reveal any criminal activity. Nonetheless, Harris continued to make allegations to law enforcement officials and others. In a letter dated December 2, 1996 to Lt. Pope, Harris stated that the Lewises were "drug cookers" and used "a strong green light" in the manufacturing process.
¶ 5. Harris also threatened violence against the Lewises, and Lt. Pope informed them of her threats. Another anonymous letter soon followed which also described a drug manufacturing process involving a green light. Harris again contacted Lt. Pope and explained that the Lewises were illegally manufacturing drugs and using a green light in the process. The December 2nd letter was forwarded to Harris's niece in an effort by Lt. Pope to end the accusations. According to Ed Fortenberry, the president of the Briarwood Homeowners' Association, Harris also approached him about the Lewises. She allegedly told him the same things she had described to Lt. Pope regarding the Lewises. Fortenberry was also contacted by the Chief of the New Orleans Police Department regarding a letter written on Briarwood Homeowners' Association letterhead about the Lewises and their alleged activities. Christina Weaver, a neighbor in the Briarwood West Subdivision, *1202 testified that she was present at Fortenberry's house when Harris made statements that the Lewises were cooking drugs in their home.
¶ 6. Harris also trespassed on the Lewis property and followed the minor children which resulted in stalking charges against Harris. Angle went to counseling as a result of the stress she suffered from Harris's harassment and defamation of her family.
¶ 7. On August 12, 1997, a jury awarded Frank E. Lewis, Jr. $3000 actual damages and Angle P. Lewis $3500 in actual damages and $900 in punitive damages. Neither of the minor children were awarded damages. The trial court denied Harris's motion for JNOV or in the alternative a new trial and her motion for remittitur. Feeling aggrieved, Harris appeals this decision.

DISCUSSION
¶ 8. As stated in Dept. Human Services v. Moore, 632 So.2d 929, 933 (Miss. 1994), objections must be made at the time offered in order to object to evidence via appeal. M.R.E. 103(a)(1), Anderson v. Jaeger, 317 So.2d 902, 907 (Miss.1975) (timely objection necessary to preserve issue for appeal, it is too late to raise issue for first time in motion for new trial). The well-recognized rule is that a trial court will not be put in error on appeal for a matter not presented to it for decision. Natural Father v. United Methodist Children's Home, 418 So.2d 807 (Miss.1982). In this case, no objection, timely or otherwise, was raised before, during or after the trial to a majority of the issues raised in this appeal. Therefore, in the interest of clarity, we will address each assignment of error asserted by Harris and the Lewises in their cross appeal.
I. WHETHER THE VERDICT OF THE JURY WAS SUPPORTED BY SUFFICIENT EVIDENCE
II. WHETHER THE VERDICT OF THE JURY WERE AGAINST THE WEIGHT OF THE CREDIBLE EVIDENCE
¶ 9. In Fulton v. Mississippi Publishers Corp., 498 So.2d 1215, 1216 (1986), the Mississippi Supreme Court held that the threshold question in a defamation action is whether the statement was defamatory because if the statement was not defamatory, little else matters. In the procedural life of a defamation suit, the lower court determines whether the statement bears the meaning ascribed to it by the plaintiff and if this meaning is defamatory. Manasco v. Walley, 216 Miss. 614, 630, 63 So.2d 91, 96 (1953); Restatement (Second) Torts § 614 (1977). If the lower court decides against the plaintiff on either of these questions, the case is ended. Id. In determining whether a statement is defamatory, Mississippi recognizes the common law rule that:
Any written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community is actionable per se.
Fulton, 498 So.2d at 1217. However, the truth is a defense. Miss. Const. Art. 3, § 13 (1890).
¶ 10. In Ferguson v. Watkins, 448 So.2d 271, 275 (Miss.1984), the supreme court refined the common law rule to require that:
the words used must have been clearly directed at the plaintiff [and] the defamation must be clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture.
Finally, in Franklin v. Thompson, 722 So.2d 688, 692 (¶ 12)(Miss.1998), the court stated:
*1203 To establish a claim for defamation, a plaintiff must prove the following elements:
(1) a false and defamatory statement concerning plaintiff;
(2) unprivileged publication to third party;
(3) fault amounting at least to negligence on part of publisher;
(4) and either actionability of statement irrespective of special harm or existence of special harm caused by publication.
Moon v. Condere Corp., 690 So.2d 1191, 1195 (Miss.1997)
¶ 11. On appeal, Harris challenges the legal sufficiency of the evidence presented against her. This Court's scope of review is limited to the same examination as that of the trial court in reviewing the motions for a directed verdict, a JNOV, or a request for a peremptory instruction. C.N. Thomas v. Harrah's Vicksburg Corp., 734 So.2d 312 (¶ 5) (Miss. App.1999). When considering a motion for directed verdict, the trial judge views all of the facts in the light most favorable to the non-moving party. Turnbough v. Steere Broadcasting Corp., 681 So.2d 1325, 1326 (Miss.1996). Accordingly, the trial judge is required to analyze the evidence and determine whether the non-moving party's evidence is so lacking that a reasonable and fair-minded jury would be unable to return a verdict in favor of the non-moving party. Tate v. Southern Jitney Jungle, 650 So.2d 1347, 1349-50 (Miss.1995). In the case at bar, Harris did not move for a directed verdict at the close of the Lewises' case; therefore, her issue on appeal is procedurally barred. Nevertheless, a simple analysis of the evidence indicates that a motion for a directed verdict would have been properly denied had one been made in this case.
¶ 12. In the case sub judice, legally sufficient evidence existed to find Harris liable for the defamation of the Lewises. The Lewises made out a prima facie case by showing that Harris authored numerous false and accusatory letters which stated that they "cooked drugs under green lights," made allegations to law enforcement officials that they were drug dealers, and told members of the Briarwood Homeowner's Association that they manufactured drugs in their house trailer. Since the Lewises put forth sufficient, credible evidence, the trial judge was required to leave the final decision to the jury.
¶ 13. Harris also asserts that the jury verdict was against the overwhelming weight of the evidence. A motion for a new trial goes to the weight of the evidence and not its sufficiency. The standard of review for jury verdicts in this state is well established. Once the jury has returned a verdict in a civil case, we are not at liberty to direct that a judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found. Starcher v. Byrne, 687 So.2d 737, 739 (Miss.1997). Our standard of review in cases involving an objection to a jury verdict based on the argument that the verdict was against the overwhelming weight of the evidence has most recently been explained by the Mississippi Supreme Court in Herrington v. Spell, 692 So.2d 93, 103-04 (Miss.1997), wherein the court stated:
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.
(citations omitted).
¶ 14. In making the determination of whether a verdict is against the *1204 overwhelming weight of the evidence, this Court must view all evidence in the light most consistent with the jury verdict, and we should not overturn the verdict unless we find that the lower court abused its discretion when it denied the motion. Veal v. State, 585 So.2d 693, 695 (Miss. 1991). The proper function of the jury is to decide the outcome in this type of case, and the court should not substitute its own view of the evidence for that of the jury's. Id. Upon reviewing all of the evidence presented in the light most consistent with the verdict, we find that the trial judge did not abuse his discretion in denying Harris's motion for JNOV, or in the alternative, a new trial. Accordingly, we dismiss this assignment of error as lacking in merit.

III. WHETHER THE TRIAL COURT ERRED IN FAILING TO CONDUCT A FAIR AND PROPER TRIAL RESULTING IN MANIFEST INJUSTICE
¶ 15. Harris asserts that the trial court erred in failing to conduct a fair and proper trial by allowing evidence and opinion testimony by lay witnesses to be admitted into evidence. It is important to note that pro se parties are held to the same rules of procedure and substantive law as represented parties. A.B. Dethlefs v. Beau Maison Development Corp., 511 So.2d 112, 118 (Miss.1987). Accordingly, Harris is procedurally barred on appeal from raising an argument not put before the trial court. Handley v. State, 574 So.2d 671, 679 (Miss.1990). Since Harris failed to object at trial, her third assignment of error has no merit.

IV. WHETHER THE LOWER COURT ERRED IN GIVING JURY INSTRUCTIONS P-7, P-8, 11, AND C-50
¶ 16. This Court does not review jury instructions in isolation. Rather, instructions are read as a whole to determine if the jury was properly instructed. Accordingly, defects in specific instructions do not require reversal "where all instructions taken as a whole fairlyalthough not perfectlyannounce the applicable primary rules of law." Starcher v. Byrne, 687 So.2d 737, 742-43 (Miss.1997).
¶ 17. The following exchange took place between Harris and the trial judge after the jury instructions were selected:
THE COURT: Are you satisfied with the jury instruction or do you have any objection to any of the instructions?
MS. HARRIS: I'm satisfied.
Nonetheless, she still assigns error with several of the jury instructions. Unfortunately, Harris again failed to object at the trial level. Her failure to raise objections at the trial court level bars any consideration of these alleged deficiencies by this Court. Handley, 574 So.2d at 679. Accordingly, this assignment of error is procedurally barred.

CROSS-APPEAL

WHETHER THE TRIAL COURT FAILED TO PROPERLY ANSWER THE JURY'S QUESTION REGARDING AN AWARD OF ATTORNEY'S FEES
¶ 18. The Lewises assert, that the trial judge should have informed the jury that if punitive damages are proper, then attorney fees may be awarded. However, the Lewises failed to preserve this issue for appeal. As stated before, where an issue is not raised at the trial court level, it is procedurally barred on appeal. Id. Therefore, we do not consider the merits of the cross-appeal.

STATUTORY DAMAGES AND INTEREST
¶ 19. Since 1857, Mississippi has imposed a mandatory penalty on parties *1205 who unsuccessfully appeal to the Mississippi Supreme Court. Miss. Rev.Code. Ch. 63, Art. 12 (1857). Furthermore, by statute, appellants are required to be charged with 15% of the judgment if it is (1) a final judgment (2) of the type specified by the statute is (3) affirmed unconditionally (4) by the Mississippi Supreme Court. Miss. Code Ann. § 11-3-23 (Rev.1991). The statute expresses a bona fide interest in providing a measure of compensation for the successful appellee who has endured the rigors of successful appellate litigation. Walters v. Inexco Oil. Co., 440 So.2d 268, 274-75 (Miss.1983).
¶ 20. Although not requested in this case, Harris is required to be charged with 15% of the final judgment since we are affirming the lower court. The public policy supporting the statutory penalty certainly justifies its application in this defamation case. The statute is designed to discourage frivolous appeals and to provide compensation for the successful appellee. The statute directs the imposition of penalties based upon the judgment or decree affirmed if it is monetary. Therefore, we impose a statutory penalty of 15% upon such sum.
¶ 21. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. THE CROSS-APPEAL IS DENIED. STATUTORY DAMAGES AND INTEREST ARE AWARDED TO THE APPELLEES. COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.